**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| TYRONE BRANTLEY, on behalf of himself and all others similarly situated, | Case No. 1:23-cv-1566 |
| Plaintiff, | **CLASS ACTION** |
| | **JURY TRIAL DEMANDED** |
| v. | |
| PRISMA LABS, INC., | |
| Defendant. | |

## FIRST AMENDED CLASS ACTION COMPLAINT

Plaintiff Tyrone Brantley, individually and on behalf of all others similarly situated ("Class Members"), bring this Class Action Complaint against Defendant Prisma Labs, Inc. ("Prisma"). Plaintiff complains and alleges as follows based on personal knowledge as to himself, the investigation of his counsel, and information and belief as to all other matters, and demands a trial by jury.

## NATURE OF THE ACTION

1.      Without providing any notice and without obtaining any consent, Prisma obtains, uses, rediscloses and profits from biometric data from billions of photographs covertly scraped from the internet – including facial images of thousands of Illinois residents – and then uses artificial intelligence algorithms to scan the facial geometry of individuals depicted in the photographs to confirm they are a human being and to harvest each individual's unique biometric

1

identifiers[1] and corresponding biometric information[2] (collectively, "Biometrics").

2.      Further, Prisma used the LAION-5B biometric database (the "LAION-5B Dataset") that contained the above-described biometric information and using the LAION-5B Dataset, along with photos uploaded by users of the Lensa, trained a "neural network AI."

3.      Prisma has branded and packaged its neural network AI as "Lensa,"[3] a free application or "app" directly to consumers with names such as "Lensa AI: photo & video editor," or "Lensa Magic Avatars." Lensa skyrocketed in popularity when it launched "Magic Avatars" in late 2022. Lensa works by inviting users to upload photos of themselves and, for a fee, will transform them. Using the neural network AI which is trained on the scraped images, Lensa processes users' photos to generate avatars that look like those created by digital artists. After introducing Magic Avatars, the Lensa app has been installed more than twenty-five million times.

4.      Prisma did not develop its technology for research purposes or other altruistic purposes. Rather, Prisma developed its technology to invade the privacy of Illinois residents for its own profit. In pursuit of profit, Prisma allows public and private entities and persons to purchase products generated from the Biometric Database, and from Biometrics collected by Lensa from its users.

5.      Accordingly, Plaintiff, on behalf of himself and similarly situated individuals, brings this action for damages and other legal and equitable remedies resulting from the actions of Prisma, for unlawfully obtaining, using, redisclosing and profiting from biometric data

---

[1] As used here, "biometric identifier" is any personal feature that is unique to an individual, including fingerprints, iris scans, DNA and "face geometry," among others. *See* 740 ILCS 14/10.

[2] As used here, "biometric information" is any information captured, converted, stored, or shared based on a person's biometric identifier used to identify an individual. *See Id.*

[3] https://prisma-ai.com/lensa

contained in the Biometric Database consisting of the Biometrics of thousands of Illinois residents. As alleged below, Defendant's conduct violated, and continues to violate, Illinois' Biometric Information Privacy Act ("BIPA"), 740 ILCS 14/1, *et seq.*, as well as other constitutional, statutory, and common law rights, causing injury to Plaintiff and Class members.

## PARTIES

6.     Plaintiff is, and at relevant times has been, a resident of Gurnee, Illinois, residing in the Northern District of Illinois.

7.     Prisma is a private, for-profit California corporation, headquartered in Sunnyvale, California.

8.     Prisma markets its technology throughout the United States, including in Illinois.

9.     Moreover, Prisma obtains the images that underlie its technology from millions of internet-based platforms and websites, including, on information and belief, based on the magnitude of platforms and websites involved, platforms and websites of Illinois companies or companies who operate servers in Illinois. Prisma's business and unlawful practices have illicitly obtained, used, redisclosed and profited from the Biometrics of unsuspecting Illinois residents. Prisma continues to engage in this conduct to this day.

## JURISDICTION AND VENUE

10.     This Court has original jurisdiction over this controversy pursuant to 28 U.S.C.§ 1332(d) because there are more than 100 Class members and the aggregate amount in controversy exceeds $5,000,000.00, exclusive of interest, fees, and costs, and at least one Class member is a citizen of a state different from one of the Defendant. The Court has supplemental jurisdiction over all the state law claims pursuant to 28 U.S.C. § 1367.

11.     This Court has personal jurisdiction over Prisma because its contacts with Illinois

are directly related to the conduct alleged here.

12.     Upon information and belief, Prisma purposely directed its illegal activities that included illicitly obtaining, using, redisclosing and profiting of biometrics and biometric information of Illinois residents at the State of Illinois, and images contained in Prisma's training set were uploaded and created using internet-based platforms and websites from companies in Illinois or companies who operate servers in Illinois. Simply put, Prisma took biometric information from Illinois residents, used the covertly obtained biometric information to create a surveillance database, and then marketed and sold licenses to use the database of Plaintiff's and Class Members' biometric information to entities and individuals nationwide, including in Illinois. As a result, Plaintiff and Class Members' privacy rights were violated.

13.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because, as alleged above, a substantial part of the acts or omissions giving rise to Plaintiff's and Class Member's claims occurred in Illinois. Alternatively, venue is proper pursuant to 28 U.S.C. § 1391(b)(3) because the Court has personal jurisdiction over Prisma.

## FACTUAL ALLEGATIONS

### *Biometric Identifiers*

14.     Every individual has unique features by which he or he/she can be identified using a set of standard quantitative measurements, commonly referred to as "biometric identifiers."

15.     For example, the shape of and distance between tiny ridges on each person's finger are unique, so measures of those features can be used to identify a specific individual as the person who made a fingerprint.

16.     Each person also has a unique facial geometry composed of, among other measurements, distances between key facial landmarks and ratios between those distances.

17.     Once a picture of a person's face is scanned and its biometric measurements are captured, computers can store that information and use it to identify that individual any other time that person's face appears on the internet, in a scanned picture or in footage from any of the billions of cameras that are constantly monitoring the public's daily lives.

18.     Unlike fingerprints, facial biometrics are readily observable and, thus, present a grave and immediate danger to privacy, individual autonomy, and liberty.

***Prisma's Unlawful Biometric Database***

19.     Prisma obtained Plaintiff and Class Members' biometric information  by taking URLs for image/text pairs from the LAION-5B Dataset, a publicly available research database of over 5 billion such URLs indiscriminately scraped from the internet.  Plaintiff is informed and believes that the websites scraped include Facebook, Instagram, Snapchat, LinkedIn and millions of other social media, as well as dating, websites, news, e-commerce, blogs and websites such as, for example, those containing photos or images from Illinois high school yearbooks, Illinois high school events and athletic games, Illinois businesses, events, local news, and residents.

20.     Prisma created, used, and/or licensed programs to collect, capture and obtain biometric information from the billions of image/text pairs in LAION 5B – including, on information and belief, the biometric information of Plaintiff and Class Members – which Prisma has in turn amassed into the training set which Prisma used to train the Lensa AI (the "Biometric Database").

21.     Plaintiff is informed and believes that Prisma uses facial recognition technology to analyze images and map the unknowing subject's face.

22.     Prisma has used and continues to use such technology, to recognize human faces in the billions of scraped photos and to continually develop its Biometric Database, or "training

set." Each time one of Prisma's users uploaded photos to Lensa and the app generated an avatar using Lensa's neural network and training set, Prisma illicitly profited from the biometric information that it wrongfully obtained from Plaintiff and the Class Members.

23. Additionally, Prisma has distributed, disseminated, sold, traded, leased and otherwise profited from the biometric information that it unlawfully collected, captured and obtained.

24. As of mid-December 2022, Prisma has, through Lensa AI, sold unfettered access to its vast Biometric Database to at least one million users, including persons in Illinois. Plaintiff is informed and believe that, as of April 2023, Lensa had generated more than $40 million in in-app revenues.

25. Prisma has also marketed its app, which uses Plaintiff's and Class Members' biometric information as part of its training set, to individuals and businesses throughout Illinois.

26. Prisma compares the facial geometry of the subject appearing in a chosen photograph or video against the facial geometry of each of the hundreds of millions of subjects appearing in its Biometric Database, including the facial geometry of each of the Plaintiffs and Plaintiff Class members. Thus, by scraping, creating, and querying the Biometric Database and Lensa AI, Prisma has necessarily obtained, accessed and used all of the Biometrics in that database, including the Biometrics of Plaintiffs and Plaintiff Class members.

27. Anyone can purchase the app and run the Lensa AI and utilize the Biometric Database, which contains the biometric information of millions of Illinois residents, including Plaintiff and Class Members.

28. Prisma knows what biometric information is in its Biometric Database. Prisma has not indicated that Plaintiff's biometric information is not contained in the Biometric Database.

29.     After a user pays the monthly subscription fee or purchases images, and sends a query through Lensa AI, Prisma uses the Biometric Database to create new pictures, avatars, through an algorithmic learning process. The avatars are derivative of the Biometric Database. Ultimately, Lensa uses Plaintiff's and Class Members' biometric information to create its highly profitable product.

***Controversial Aspects of the Lensa App and Technology***

30.     The technology used in the Lensa app is prone to misuse, abuse and unintended results.

31.     For example, people of color have reported instances of AI bias in Lensa-generated avatars, claiming that the app gave them stereotypical or overly exaggerated features based on their race and cultural heritage.

32.     Many users—primarily women—report that the app generates nude or otherwise overtly sexualized avatars of them. This occurs even when the user has only uploaded close-up images of only their face to the app.

33.     Disturbingly, some users have reportedly used Lensa to create sexually suggestive or explicit animated images of other people and then distributed the images without the subject's consent. This raises concerns about the potential for widespread dissemination of non-consensual, sexually explicit avatars and the exploitation of children.

34.     The Lensa technology can conceivably be used for innumerable criminal enterprises, disinformation campaigns and "deepfake" platforms, given that it grants the public an unlimited ability to inexpensively create photorealistic AI-generated images.

35.     Reportedly, certain filters and stickers in the app appear to be copied or stolen from artists and photographers that are not affiliated with Defendant, without proper credit or

permission being given. Indeed, Lensa uses watermarked and copyrighted works on the internet without obtaining consent to use these works in training data.

***Allegations Related to Plaintiff***

36.    Plaintiff regularly uses various social media platforms. For example, Plaintiff has maintained a Facebook profile for approximately 15 years and currently has nearly 5,000 Facebook followers. Plaintiff interacts on this platform daily. Over the course of the past 15 years, he has posted hundreds of photographs of himself on Facebook. Not only are these photographs accessible to Plaintiff's Facebook followers (who may share, screenshot, download or otherwise disseminate the photographs elsewhere on the internet), several photographs are accessible to the public.

37.    On diverse occasions Plaintiff's friends and followers have posted photographs that feature or include the Plaintiff on their Facebook accounts. Sometimes Plaintiff is "tagged" in these photographs, meaning that he is made aware when the third party posts a photograph where he is featured, but other times, he is not. Plaintiff regularly attends social activities where large groups gather, such as musical performances, sporting events, social gatherings and more. During these events, many people take photographs with their cell phones. Plaintiff reasonably assumes that he has appeared in hundreds or thousands of such photographs (whether prominently featured in the photograph, or shown in the background), an unknown number of which have been uploaded to various internet sites.

38.    Similarly, Plaintiff has maintained an Instagram account for approximately 15 years. Currently, he has over 300 followers. His Instagram account and Facebook account are linked, meaning that all of the photographs uploaded and shared on Facebook have also been uploaded and shared on Instagram. Again, Plaintiff's Instagram followers may share, download

or screenshot his photographs and repost them on various places on the internet (with or without his knowledge). Furthermore, others may post photographs that depict Plaintiff and "tag" him in those photos. Likewise, others may post photographs that include Plaintiff without tagging him, or may post photographs showing Plaintiff in the background.

39.     Plaintiff also maintains an account on Snapchat, which he has used daily for the past seven years. Plaintiff has posted numerous popular photographs and videos, one of which garnered over 7,000 views. Snapchat is a popular messaging app that lets users exchange pictures and videos, called snaps, that are meant to disappear after they are viewed. However, pictures and videos can be saved or screenshot before they disappear. Saved pictures and videos and screenshots can be shared indiscriminately or uploaded to other places on the internet.

40.     Plaintiff also maintains profiles on the dating apps Tinder and BLK. The creation of a Tinder account requires users to upload photographs of themselves. Tinder then utilizes a "Photo Verification" process intended to establish that the actual user matches the photographs that he or she has provided. To get Photo Verified, users (such as Plaintiff) submit a short video selfie that is compared to their profile photos using facial recognition technology. Plaintiff completed this verification process as part of creating his Tinder profile, and maintains photographic images of himself on the app. Tinder is considered the most popular dating app worldwide, with over 67 million annual downloads. Photographs on the site may be saved, screenshot, disseminated and uploaded to other internet platforms.

41.     Plaintiff has also uploaded photographs of himself to his BLK profile. BLK is the top dating and lifestyle app for the Black community in the U.S., with over 7 million downloads. Photographs on the site may be saved, screenshot, disseminated and uploaded to other internet platforms.

42.     In short, while in Illinois Plaintiff uploaded photographs of himself in Illinois to various websites and to servers in Illinois. These photographs contained his facial geometry. Further, at relevant times, photographs taken in Illinois and containing images of Plaintiff's face and facial geometry were uploaded by others to various websites on the internet and to servers in Illinois. In creating and maintaining its Biometric Database, Prisma accesses the LAION-5B Dataset which contains images of the Plaintiff and Class Members. On information and belief, given Plaintiff's prolific social media presence, the broad access that others have to his photographs and facial geometry, the scraping of millions of URLs and the billions of photographs contained in the database, Plaintiff's biometric information is contained in the LAION-5B Dataset and was accessed by Prisma in creating its Biometric Database.

43.     After accessing the LAION-5B Dataset, Prisma performed facial geometric scans of the various faces in the photographs, including Plaintiff's face and Class Members' faces, in order to collect, capture and obtain biometric information from those faces.  This biometric information is used to create, augment and develop its training set for the Lensa app.

44.     Prisma also profited from the biometric information contained in its Biometric Database, including the biometric information of Plaintiff and Class Members, by using that biometric information to create the output that Lensa AI sells to its users, and to prevent losses and/or improve the client experience.

45.     Prisma (a) never informed Plaintiff or Class Members in writing or otherwise of the purpose for which it was collecting, capturing, obtaining, purchasing, disclosing, redisclosing and disseminating the biometric information of Plaintiff and Class Members; and (b) never sought, nor received, a written release or other consent from Plaintiff or Class Members or the respective authorized representatives of Plaintiff or Class Members that allowed Prisma to collect,

capture, obtain, purchase, disclose, redisclose, disseminate and profit from the biometric information of Plaintiff and Class Members.

46.     Further, Plaintiff and Class members never consented, agreed or gave permission – written or otherwise – to Prisma for the collection or storage of their unique biometric information. Indeed, prior to Prisma's Biometric Database being publicized, Plaintiff and Class Members had no idea Prisma was ever in possession of their photographs and Biometrics.

47.     Likewise, Prisma never provided Plaintiff or Class members with an opportunity to prohibit or prevent the collection, storage, use or dissemination of their unique biometric information.

***The Injuries and Damages of Plaintiff and Class members***

48.     As alleged herein, as a result of Defendant's unlawful conduct, Plaintiff and Class Members have already sustained injuries and face many more imminent and impending injuries which they will continue to suffer.

49.     Defendant's unlawful conduct has resulted in, among other things: (a) Plaintiff's and Class Members' unique biometric information being collected, captured, obtained, purchased, disclosed, redisclosed and otherwise disseminated without the requisite notice having been given and without the requisite releases or consents having been obtained; and (b) Plaintiff and Class members being deprived of control over their biometric information.

50.     To this day, Plaintiff and Class Members do not know which, or how many, individuals or entities have received, obtained, purchased, received through trade, accessed, stored, disclosed, redisclosed or otherwise made use of Plaintiff's and Class Members' biometric information, exposing them to the imminent and certainly impending injuries of identity theft, fraud, stalking, surveillance, social engineering and other invasions of privacy.

51.     Plaintiff and Class Members have also been injured and face many more imminent and impending injuries because their biometric data has been used to train technology that is prone to misuse and abuse.  Namely, Prisma's Lensa app perpetuates racial bias and stereotypes, sexualizes women and children and is used to create non-consensual deep fake images.  This abuse of the app's technology not only exploits innocent people, but it creates significant problems for governments and law enforcement.

52.     As a result of Defendant's misconduct, Plaintiff and Class Members have no recourse for the fact that their biologically unique information has been compromised. Moreover, Plaintiff and Class Members are likely to withdraw from biometric-facilitated transactions and other facially-mediated electronic participation.

## CLASS ACTION ALLEGATIONS

53.     Plaintiff brings this action pursuant to Federal Rule of Civil Procedure 23(b)(2)-(3) and 23(c)(4) on behalf of himself and the following Class:

> All individuals who reside or resided in the State of Illinois whose biometric information was or is contained in Prisma's Biometric Database.

54.     Excluded from the Class are: (a) Prisma; (b) any parent, affiliate or subsidiary of Prisma; (c) any entity in which Prisma has a controlling interest; (d) any of Prisma's officers or directors; and (e) any successor or assign of Prisma. Also excluded are any judge or court personnel assigned to this case and members of their immediate families.

55.     Plaintiff reserves the right to amend or modify the class definition with greater specificity or division after having had an opportunity to conduct discovery.

56.     **Numerosity:** Members of the Class are so numerous that their individual joinder herein is impracticable. Upon information and belief, the members of the Class number in the thousands—and potentially millions. The precise number of Class members and their identities

are unknown to Plaintiffs at this time but may be determined through discovery and objective data. Class members may be notified of the pendency of this action by mail, electronic mail, internet postings, social media and/or publication.

57.    **Commonality and predominance:** Common questions of law and fact exist as to all Class members and predominate over questions affecting only individual members. Common legal and factual questions include, but are not limited to:

a.    Whether Prisma captured, collected, obtained, accessed, created, stored, used, commercialized, disseminated, disclosed, redisclosed and/or profited from the Biometrics of Plaintiff and Class members;

b.    Whether the actions of Prisma violated Illinois statutes;

c.    Whether the actions of Prisma violated Illinois and Federal constitutional and common law rights;

d.    Whether Prisma properly informed Plaintiff and Class members that it was collecting, capturing, obtaining, creating, accessing, storing, using, commercializing, disseminating, disclosing and redisclosing their Biometrics;

e.    Whether Prisma used the Biometrics of Plaintiff and members of the Class to covertly parse their photos, identify them as individual human beings, build the training set for Lensa, generate products sold through Lensa, and profit from the Biometric Information of Plaintiff and the Class;

f.    Whether Prisma acted negligently, recklessly or intentionally in, directly or indirectly, scraping individuals' photographs from the internet and/or using them to identify individuals based upon facial geometry;

g.     Whether Prisma should be enjoined from continuing its practices;

h.     Whether Prisma engaged in the practices described throughout this complaint;

i.     Whether Prisma failed to provide notice that it was collecting, capturing, obtaining, accessing, using, storing and disseminating individuals' images, facial geometry and Biometrics; and

j.     Whether Prisma provided any mechanism for Class members to consent to its practices;

58.     **Typicality:** The claims of the named Plaintiff are typical of the claims of Class members because Plaintiff and all members of the proposed Class have suffered similar injuries as a result of the same practices alleged herein. Plaintiff has no interests to advance that are adverse to the interests of the other members of the proposed Class. Plaintiff is unaware of any of his personal interests that are adverse to the interests of the other members of the proposed Class.

59.     **Adequacy:** Named Plaintiff is an adequate representative of the proposed Class because his interests do not conflict with the interests of the Class members he seeks to represent, he has retained competent counsel experienced in prosecuting class actions, and he intends to prosecute this action vigorously. The interests of the Class members will be fairly and adequately protected by named Plaintiff and his counsel.

60.     **Superiority:** The class mechanism is superior to other available means for the fair and efficient adjudication of the claims and defenses of the Class members and the named plaintiff. Each individual member of the Class may lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to establish

Prisma's liability. Further, individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case. Individualized litigation also presents a potential for inconsistent or contradictory judgments. In contrast, the class action device presents far fewer management difficulties and provides the benefits of a single adjudication, economy of scale and comprehensive supervision by a single court on the issue of the liability of Prisma. Class treatment of the liability issues will ensure that all claims and claimants are before this Court for consistent adjudication of the liability issues.

61.     In the alternative, the proposed class may be certified because:

    a.     The prosecution and defense of separate actions by each individual member of the proposed Class would create a risk of inconsistent adjudications, which could establish incompatible standards of conduct for Prisma.

    b.     The prosecution and defense of individual actions the interests of non-party Class members or which would substantially impair their ability to protect their interests; and

    c.     Prisma acted or refused to act on grounds generally applicable to the proposed Class, thereby making final and injunctive relief appropriate with respect to members of the proposed Class.

62.     Pursuant to Rule 23(c)(4), particular issues are appropriate for certification, namely the issues described above in regard to commonality and predominance, because resolution of such issues would advance the disposition of the matter and the parties' interests therein.

<u>**COUNT ONE**</u>
**VIOLATION OF BIPA – 740 ILCS 14/15(b)**

63.     Plaintiff incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

64.     BIPA seeks to safeguard Illinois residents' biometric identifiers and biometric information.

65.     Pursuant to BIPA, biometric identifiers include a scan of an individual's face geometry. 740 ILCS 14/10.

66.     Pursuant to BIPA, biometric information is "any information . . . based on an individual's biometric identifier used to identify an individual." 740 ILCS 14/10.

67.     Pursuant to BIPA, Defendant Prisma is a private entity as defined in 740 ILCS 14/10.

68.     Pursuant to BIPA, a private entity, such as Defendant Prisma is among other things, prohibited from collecting, capturing, purchasing, receiving through trade or otherwise obtaining an individual's biometric identifiers and information without first: (a)informing the individual or the individual's authorized representative in writing that the biometric identifier and information are being collected or stored; (b) informing the individual or the individual's authorized representative of the specific purpose and length of term for which the biometric identifier and information are being collected, stored and used; and (c) obtaining a written release. 740 ILCS 14/15(b).

69.     Pursuant to BIPA, a private entity, such as Defendant Prisma,
(a) is prohibited from selling, leasing, trading or otherwise profiting from an individual's biometric identifiers and information; (b) is prohibited from disclosing, redisclosing or otherwise disseminating an individual's biometric identifiers or information without first obtaining consent;

and (c) must store, transmit and protect from disclosure all biometric identifiers and biometric information in its possession using the reasonable standard of care within the private entity's industry and in a manner which is the same as or more protective than the manner in which the private entity stores, transmits and protects other confidential and sensitive information. 740 ILCS 14/15(c)-(e).

70.     BIPA provides for a private right of action and allows a prevailing party to recover liquidated damages in the amount of: (a) $1,000 or actual damages, whichever is greater, for negligent violations of its provisions; and (b) $5,000 or actual damages, whichever is greater, for intentional or reckless violations of its provisions. 740 ILCS 14/20. BIPA also allows for the recovery of attorneys' fees and costs and injunctive relief. 740 ILCS 14/20.

71.     As alleged above, Prisma violated BIPA by collecting, capturing, purchasing, receiving through trade and/or otherwise obtaining individuals' biometric identifiers and information, including the biometric identifiers and information of Plaintiff and Class members, without first providing the requisite written information and without obtaining the requisite written releases.

72.     The BIPA violations of Prisma were intentional and reckless or, pleaded in the alternative, negligent.

73.     As a direct and proximate result of the BIPA violations of Prisma, Plaintiff and Class members have suffered and will continue to suffer injury.

74.     Plaintiffs and Class members seek as monetary relief the greater of $5,000 or actual damages or, pleaded in the alternative, $1,000 or actual damages.

75.     Unless and until enjoined and restrained by order of this Court, the wrongful conduct of Prisma will continue to cause great and irreparable injury to Plaintiff and Class

members in that their biometric identifiers and information can be viewed and used by unauthorized persons. Plaintiff and Class members have no adequate remedy at law for their injuries in that a judgment for monetary damages will not end the misuse of their biometric identifiers and information.

76.     Plaintiff and Class members also seek punitive damages, injunctive relief and reasonable attorney's fees, costs and expenses relating to this action.

## COUNT TWO
## VIOLATION OF BIPA – 740 ILCS 14/15(b)

77.     Plaintiff incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

78.     Prisma collected, captured, purchased, received through trade and/or otherwise obtained the biometric identifiers and information of Plaintiff and Class members, among others, for the purpose of distributing, redistributing and disseminating those biometric identifiers and biometric information to Illinois entities in Illinois.

79.     As alleged above, Prisma violated BIPA by collecting, capturing, purchasing, receiving through trade and/or otherwise obtaining Illinois residents' biometric identifiers and information, including the biometric identifiers and information of Plaintiff and Class members, without first providing the requisite written information and without obtaining the requisite written releases.

80.     The BIPA violations of Prisma were intentional and reckless or, pleaded in the alternative, negligent.

81.     As a direct and proximate result of the BIPA violations of Prisma, Plaintiff and Class members have suffered and will continue to suffer injury.

82.     Plaintiff and Class members seek as monetary relief the greater of $5,000 or actual

damages or, pleaded in the alternative, $1,000 or actual damages.

83.     Unless and until enjoined and restrained by order of this Court, the wrongful conduct of Prisma will continue to cause great and irreparable injury to Plaintiff and Class members in that their biometric identifiers and information can be viewed and used by unauthorized persons. Plaintiff and Class members have no adequate remedy at law for their injuries in that a judgment for monetary damages will not end the misuse of their biometric identifiers and information.

84.     Plaintiff and Class members also seek punitive damages, injunctive relief and reasonable attorney's fees, costs and expenses relating to this action.

## COUNT THREE
### VIOLATION OF BIPA – 740 ILCS § 14/15(c)

85.     Plaintiff restates and realleges paragraphs his previous allegations as though fully set forth in this part.

86.     As alleged above, Prisma violated BIPA by unlawfully selling, leasing, trading and otherwise profiting from individual's biometric identifiers and biometric information, including the biometric identifiers and information of Plaintiff and Class members.

87.     The BIPA violations of Prisma were intentional and reckless or, pleaded in the alternative, negligent.

88.     As a direct and proximate result of the BIPA violations of Prisma, Plaintiff and Class members have suffered and will continue to suffer injury.

89.     Plaintiff and Class members seek as monetary relief the greater of $5,000 or actual damages or, pleaded in the alternative, $1,000 or actual damages.

90.     Unless and until enjoined and restrained by order of this Court, the wrongful conduct of Prisma will continue to cause great and irreparable injury to Plaintiff and Class

members in that their biometric identifiers and information can be viewed and used by unauthorized persons. Plaintiff and Class members have no adequate remedy at law for their injuries in that a judgment for monetary damages will not end the misuse of their biometric identifiers and information.

91.     Plaintiff and Class members also seek punitive damages, injunctive relief and reasonable attorney's fees, costs and expenses relating to this action.

**COUNT FOUR**
**VIOLATION OF BIPA – 740 ILCS § 14/15(d)**

92.     Plaintiff incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

93.     As alleged above, Prisma and violated BIPA by disclosing, redisclosing and otherwise disseminating individuals' biometric identifiers and information, including the biometric identifiers and information of Plaintiff and Class members, even though: (a) neither the subjects of the biometric identifiers and information nor their authorized representatives consented to the disclosure and redisclosure; (b) the disclosure and redisclosure did not complete a financial transaction requested or authorized by the subjects of the biometric identifiers and information or their authorized representatives; (c) the disclosure and redisclosure were not required by State or federal law or municipal ordinance; and (d) the disclosure and redisclosure were not required pursuant to a valid warrant or subpoena issued by a court of competent jurisdiction.

94.     The BIPA violations of Prisma were intentional and reckless or, pleaded in the alternative, negligent.

95.     As a direct and proximate result of the BIPA violations of Prisma, Plaintiff and Class members have suffered and will continue to suffer injury.

96.     Plaintiff and Class members seek as monetary relief the greater of $5,000 or actual damages or, pleaded in the alternative, $1,000 or actual damages.

97.     Unless and until enjoined and restrained by order of this Court, the wrongful conduct of Prisma will continue to cause great and irreparable injury to Plaintiff and Class members in that their biometric identifiers and information can be viewed and used by unauthorized persons. Plaintiff and Class members have no adequate remedy at law for their injuries in that a judgment for monetary damages will not end the misuse of their biometric identifiers and information.

98.     Plaintiff and Class members also seek punitive damages, injunctive relief and the reasonable attorneys' fees, costs and expenses relating to this action.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself and Class members, respectfully requests that the Court:

a.     Certify the Class, appoint Plaintiff as the named representative of the Class, and appoint his lawyers as counsel for the Class;

b.     Award Plaintiff and the Class members statutory, compensatory, punitive, exemplary, consequential, general and nominal damages in an amount to be determined at trial;

c.     Grant permanent injunctive relief to prohibit Prisma from continuing to engage in the unlawful acts and practices described herein;

d.     Award Plaintiff and members of the proposed Class pre-judgment and post-judgment interest as permitted by law;

e.     Award to Plaintiff and members of the Class the costs and disbursements

of the action, along with reasonable attorneys' fees, costs and expenses; and

    f.      Grant all such other relief as it deems just and proper.

## JURY DEMAND

Plaintiffs demand a trial by jury on all causes of action and issues so triable.

Dated: July 28, 2023               Respectfully Submitted,

By: */s/ Samuel J. Strauss*
    Samuel J. Strauss
    Raina C. Borrelli
    TURKE & STRAUSS LLP
    613 Williamson St., Suite 201
    Madison, WI 53703
    Telephone: (608) 237-1775
    Facsimile: (608) 509-4423
    sam@turkestrauss.com
    raina@turkestrauss.com

    Michael F. Ram
    Marie N. Appel
    MORGAN & MORGAN
    COMPLEX LITIGATION GROUP
    711 Van Ness Avenue, Suite 500
    San Francisco, CA 94102
    Telephone: (415) 358-6913
    Facsimile: (415) 358-6923
    mram@forthepeople.com
    mappel@forthepeople.com

    *Attorneys for Plaintiffs and the Proposed Class*

## **CERTIFICATE OF SERVICE**

I hereby certify that, on July 28, 2023, a copy of the foregoing was filed using the CM/ECF electronic filing system.  Service of this filing will be made on attorneys of record in the case by operation of the Court's electronic filing system, and parties may access these filings through the Court's electronic filing system.

/s/ Samuel J. Strauss
Samuel J. Strauss