**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| TYRONE BRANTLEY, on behalf of himself and all others similarly situated, | Case No. 1:23-cv-1566 |
| Plaintiff, | Honorable Jorge L. Alonso |
| v. | **ORAL ARGUMENT REQUESTED** |
| PRISMA LABS, INC., | |
| Defendant. | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT PRISMA LABS, INC.'S
<u>MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT</u>**

**TABLE OF CONTENTS**

Page

INTRODUCTION ................................................................................................................ 1

FACTUAL BACKGROUND .............................................................................................. 2

ARGUMENT ...................................................................................................................... 3

     I.     Plaintiff Lacks Article III Standing as a Matter of Law and Fact......................... 3

          A.     Plaintiff Fails to Allege a Concrete Injury. ................................................. 4

               i.     Plaintiff's Alleged Injury Is Entirely Speculative.......................... 4

               ii.     The Mere Inclusion of Images in a Dataset Does Not
Constitute an Injury under TransUnion. ........................................ 6

               iii.    Plaintiff's 15(c) Claim Requires a Particularized Showing
That Plaintiff Was Harmed by the Sale of His Data. ..................... 7

          B.     Prisma Did Not Cause Plaintiff's Purported Injury. ................................. 8

          C.     Plaintiff's Suit Would Not Redress His Purported Injury. ..................... 10

     II.     Plaintiff Fails to State a Claim Upon Which Relief Can Be Granted. ................ 11

          A.     Plaintiff's Belief that the Dataset Contained His Biometric
Information Is Unsupported and Entirely Speculative............................. 11

          B.     BIPA Does Not Apply Because Prisma's Conduct Occurred
Outside Illinois............................................................................................. 13

          C.     Plaintiff Fails to State a Claim under BIPA Section 15(b). ..................... 14

          D.     Plaintiff Fails to State a Claim Under BIPA Section 15(c) Because
Prisma Did Not Profit from His Biometric Information........................... 16

          E.     Plaintiff Fails to State a Claim Under BIPA Section 15(d) because
Prisma Did Not Disclose, Redisclose, or Disseminate His
Biometric Information. ................................................................................ 17

     III.    Plaintiff's Purported Class Includes Lensa Users Subject to Binding
Arbitration........................................................................................................... 18

     IV.    This Court Lacks Personal Jurisdiction Over Prisma. ........................................ 18

CONCLUSION................................................................................................................. 20

# **TABLE OF AUTHORITIES**

**Page(s)**

CASES

*Alam v. Miller Brewing Co.*,
   709 F.3d 662 (7th Cir. 2013) ........................................................................................11, 16

*Allen v. Wright*,
   468 U.S. 737 (1984)............................................................................................................10

*Alonso v. Blue Sky Resorts, LLC*,
   179 F. Supp. 3d 857 (S.D. Ind. 2016)..............................................................................5, 6

*Apex Digital, Inc. v. Sears, Roebuck & Co.*,
   572 F.3d 440 (7th Cir. 2009) .............................................................................................4, 9

*Asahi Metal Ind. Co., Ltd. v. Super. Ct. of Cal.*,
   480 U.S. 102 (1987)............................................................................................................19

*Auyeung v. Toyota Motor Sales, USA, Inc.*,
   2019 WL 3385189 (N.D. Ill. July 1, 2019)........................................................................18

*Avery v. State Farm Mut. Auto. Ins. Co.*,
   835 N.E.2d 801 (Ill. 2005).................................................................................................13

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)...................................................................................................1, 12, 13

*Bender v. Williamsport Area Sch. Dist.*,
   475 U.S. 534 (1986).............................................................................................................6

*Bernal v. ADP, LLC*,
   2019 WL 5028609 (Ill. Cir. Ct. Aug. 23, 2019) ...............................................................14

*Brickstructures, Inc. v. Coaster Dynamix, Inc.*,
   2017 WL 4310671 (N.D. Ill. Sept. 28, 2017) ...................................................................12

*Carpenter v. McDonald's Corp.*,
   580 F. Supp. 3d 512 (N.D. Ill. 2022) ................................................................................17

*Clark v. Microsoft Corp.*,
   2023 WL 5348760 (N.D. Ill. Aug. 21, 2023) ..............................................................14, 15

*Daimler AG v. Bauman*,
   571 U.S. 117 (2014)...........................................................................................................18

*DaimlerChrysler Corp. v. Cuno*,
   547 U.S. 332 (2006)........................................................................................4

*Doe v. Holcomb*,
   883 F.3d 971 (7th Cir. 2018) ...............................................................10, 11

*Duquesne Light Co. v. U.S. E.P.A.*,
   166 F.3d 609 (3d Cir. 1999).............................................................................8

*Flora v. Prisma Labs, Inc.*,
   2023 WL 5061955 (N.D. Cal. Aug. 8, 2023) .....................................5, 18, 19, 20

*Flynn v. FCA US LLC*,
   39 F.4th 946 (7th Cir. 2022) .....................................................................4, 10

*Goplin v. WeConnect, Inc.*,
   893 F.3d 488 (7th Cir. 2018) ........................................................................2

*Gorgas v. Amazon.com, Inc.*,
   2023 WL 4173051 (N.D. Ill. June 23, 2023) ..................................................8

*Grasty v. Colo. Tech. Univ.*,
   599 F. App'x 596 (7th Cir. 2015) ...............................................................18

*Hancock v. Urban Outfitters, Inc.*,
   830 F.3d 511 (D.C. Cir. 2016) ....................................................................7

*Hazlitt v. Apple Inc.*,
   543 F. Supp. 3d 643 (S.D. Ill. 2021).......................................................16, 17

*Heard v. Becton, Dickinson & Co.*,
   440 F. Supp. 3d 960 (N.D. Ill. 2020) .......................................................12, 13

*Hogan v. Amazon.com, Inc.*,
   2022 WL 952763 (N.D. Ill. Mar. 30, 2022)..................................................16

*Jones v. Microsoft Corp.*,
   2023 WL 130495 (N.D. Ill. Jan. 9, 2023) .................................................15, 16

*Lewis v. Casey*,
   518 U.S. 343 (1996)........................................................................................4

*Lujan v. Defenders of Wildlife*,
   504 U.S. 555 (1992)....................................................................................6, 8

*McNally Tunneling Corp. v. City of Evanston*,
   2001 WL 76338 (N.D. Ill. Jan. 26, 2001) .................................................18

*Neals v. PAR Tech. Corp.*
    419 F. Supp. 3d 1088 (N.D. Ill. 2019) ...................................................................14

*Patterson v. Respondus, Inc.*,
    593 F. Supp. 3d 783 (N.D. Ill. 2022) ...........................................................7, 8, 17

*Perry v. Vill. of Arlington Heights*,
    186 F.3d 826 (7th Cir. 1999) .............................................................................4

*Pritikin v. Dep't of Energy*,
    254 F.3d 791 (9th Cir. 2001) .............................................................................8

*Spokeo, Inc. v. Robins*,
    578 U.S. 330 (2016).....................................................................................4, 10

*Stein v. Clarifai*,
    526 F.Supp.3d 339 (N.D. Ill. 2021) ...................................................................20

*Strautins v. Trustwave Holdings, Inc.*,
    27 F. Supp. 3d 871 (N.D. Ill. 2014) ................................................................5, 6

*Surfside Non-Surgical Orthopedics P.A. v. Allscripts Healthcare Sols., Inc.*,
    2019 WL 2357030 (N.D. Ill. June 4, 2019) ......................................................8, 10

*Thornley v. Clearview AI, Inc.*,
    984 F.3d 1241 (7th Cir. 2021) ...........................................................................8

*TransUnion LLC v. Ramirez*,
    141 S. Ct. 2190 (2021).......................................................................................7

*Vance v. Amazon.com, Inc.*,
    2022 WL 12306231 (W.D. Wash. Oct. 17, 2022) ..................................................13

*Walden v. Fiore*,
    571 U.S. 277 (2014)....................................................................................19, 20

*Waldman v. Conway*,
    871 F.3d 1283 (11th Cir. 2017) .........................................................................8

*Yeftich v. Navistar, Inc.*,
    722 F.3d 911 (7th Cir. 2013) ..........................................................................12

*Zellmer v. Facebook, Inc.*,
    2022 WL 976981 (N.D. Cal. Mar. 31, 2022)..................................................14, 15

**OTHER AUTHORITIES**

U.S. Const., Art III ......................................................................................... *passim*

Illinois Biometric Information Privacy Act ("BIPA") .......................................... *passim*

Fed. R. Civ. P. 8 .................................................................................................12, 16

Fed. R. Civ. P. 12 ...............................................................................................11, 18

## INTRODUCTION

This is a motion to dismiss Plaintiff's misdirected claims against Defendant Prisma Labs, Inc. ("Prisma"). Prisma is the developer of the Lensa App, a popular iPhone and Android application that helps users edit photos and videos. *Notably, Plaintiff does not allege he ever used the Lensa App.* Nor does he allege that he or anyone ever uploaded photos or videos of him to the Lensa App. Indeed, the absence of privity between Plaintiff and Prisma is striking.

The crux of Plaintiff's First Amended Complaint ("FAC") is that billions of photographs were scraped from the internet to create a photo repository and that this repository was later used to train artificial intelligence ("AI") software. Though his Complaint is muddled, the Plaintiff appears correct: photos were scraped from the internet and photos were used to train artificial intelligence software. That is not disputed.

Yet Plaintiff's case fails because, among other problems, **he has sued the wrong party**. Prisma, the sole Defendant in this case, is not the company that downloaded photos from the internet or the company that trained its software using those images. Prisma, like of thousands of other companies, used software *developed by others*. Like a business that uses Microsoft Word to operate, Prisma is not responsible—or liable—for choices *another company* made developing software it later used.

Even ignoring privity—which is woefully lacking—Plaintiff's case implodes under basic scrutiny. Indeed, his supposed injury rests on pure speculation: that because software was trained on *billions* of photographs, it must have been trained on *his* photographs. Such rank speculation that he *might* have had his images scraped is not sufficient to establish Article III injury or to state a claim under *Twombly* and *Iqbal*.

Moreover, even assuming Plaintiff's photo was contained in the photo repository—a

dataset in no way controlled by Prisma—Plaintiff has failed to plead key facts, including how Prisma profited from *his* information in particular. He has also failed to allege how he suffered at the hands of Prisma given the AI training occurred before Prisma ever used the software.

Finally, the Court lacks jurisdiction over Prisma because Prisma is incorporated and headquartered in California, yet none of the alleged conduct took place in Illinois. Plaintiff posits that critical conduct "necessarily" took place on Illinois servers given the large volume of photos he uploaded to the internet, but he fails to furnish any foundation for such supposition. Ultimately, Plaintiff's specious inferences and circular claims do not make for federal court jurisdiction—in Illinois or elsewhere. Thus, the FAC should be dismissed in its entirety.

## FACTUAL BACKGROUND

Prisma, a California corporation, is the developer of the Lensa App (the "App"), a popular mobile application that helps users edit their photos, including through retouching, cropping, and resizing. FAC, ¶ 3. The Lensa App can also be used to generate new photos, called "Magic Avatars," that are based on photos that users upload. *Id.* As Prisma explains in its Privacy Policy,[1] the Magic Avatar features works by running third party software, specifically the neutral network model of non-party Stability AI called Stable Diffusion.

Plaintiff Tyrone Brantley, a resident of Illinois, does not allege that he ever used the App. Nor does he allege that he, or anyone, uploaded his photo to the Lensa App. Plaintiff instead alleges that he uploaded photographs of himself to various *other* websites (such as Facebook) and that *some photographs* from those websites ended up in a dataset called LAION-5B. FAC, ¶¶ 36-42.

Non-party LAION, a German non-profit with no ties to Prisma, created the LAION-5B

---

[1] Attached as Ex. 1. Plaintiff incorporated this Privacy Policy in his original Complaint, ECF No. 1 ¶ 26, and that policy is available on Prisma's website: https://tos.lensa-ai.com/privacy-dec-15-2022. The current policy is also available on Prisma's website: https://tos.lensa-ai.com/privacy. The Court can take judicial notice of a party's public websites. *See Goplin v. WeConnect, Inc.*, 893 F.3d 488, 491 (7th Cir. 2018).

dataset. Declaration of Oleg Poyaganov ("Poyaganov Decl."), attached hereto as Ex. 3, ¶ 4. Prisma has never used any part of the LAION-5B dataset for any version of the Lensa App. *Id. at* ¶ 16. Nor does Prisma have any knowledge of whose photographs are contained in the dataset. *Id.*

Plaintiff assumes, "based on the magnitude of platforms and websites involved," that the LAION-5B dataset "necessarily" scraped servers in Illinois and that these servers "necessarily" contained his photographs. FAC, ¶¶ 9, 19, 26. He does not identify a single server located in Illinois that he believes hosted his images or explain why his photos would be hosted on Illinois servers, let alone connect such a server to the date collected by LAION. Similarly, Plaintiff does not identify a single photograph of him that he believes was scraped by LAION. Instead, he merely assumes *some* images of him must be included in the dataset "given [his] prolific social media presence" as he believes LAION scraped *some* of the websites Plaintiff uses. FAC ¶¶ 9, 26, 42.

In 2022, non-party Stability AI used the LAION-5B dataset to fine-tune its AI model, called Stable Diffusion. Poyaganov Decl., ¶¶ 9-10. Stable Diffusion does not contain photos from LAION-5B; it is merely software that was *previously* taught to look for patterns on LAION-5B data. *Id.* Stability AI's training of Stable Diffusion took place before Prisma integrated Stable Diffusion into the Lensa App. *Id.* ¶ 13. Prisma and Stability AI are separate unaffiliated companies. *Id.* ¶ 12.

Plaintiff asserts four counts against Prisma under BIPA on behalf of himself and "[a]ll individuals who reside or resided in the State of Illinois whose biometric information was or is contained in Prisma's Biometric Database." FAC ¶ 53. Prisma moved to dismiss. Instead of responding to the motion to dismiss, Plaintiff, conceding its strength, filed an amended complaint.

## **ARGUMENT**

### I. **Plaintiff Lacks Article III Standing as a Matter of Law and Fact.**

As "[t]he party invoking federal jurisdiction," the Plaintiff "bears the burden of establishing

the elements of standing." *Perry v. Vill. of Arlington Heights*, 186 F.3d 826, 829 (7th Cir. 1999). Putative class representatives must establish their own standing on an individual basis, *Lewis v. Casey*, 518 U.S. 343, 357 (1996). And Plaintiff must establish standing "for each claim" and "form of relief sought." *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006) (cleaned up).

At the pleading stage, standing can be challenged on either a facial or factual basis. Importantly, "***when considering a motion that launches a factual attack against jurisdiction, the district court may properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists***." *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 443 (7th Cir. 2009) (cleaned up).[2] Once a defendant proffers "evidence calling [the plaintiff's] standing into question[,] ... the presumption of correctness that we accord to a complaint's allegations falls away, ... and ***the plaintiff bears the burden of coming forward with competent proof that standing exists***." *Id.* (cleaned up). That is, "the plaintiff can no longer rest on the allegations in the complaint but must adduce specific *evidence* to ... establish his standing to sue." *Flynn v. FCA US LLC*, 39 F.4th 946, 952 (7th Cir. 2022) (emphasis in original).

Here, Plaintiff's theory of standing is both facially and factually deficient. First, Plaintiff's case fails for facial reasons—his purported injury is entirely speculative and hypothetical. Second, Plaintiff's case fails for a factual reason—he sued the wrong party.

### A. Plaintiff Fails to Allege a Concrete Injury.

#### i. Plaintiff's Alleged Injury Is Entirely Speculative.

It is black letter law that to plead an injury-in-fact, a plaintiff must allege an injury that is "concrete and particularized" and "actual or imminent, ***not conjectural or hypothetical***." *Spokeo,*

---

[2] Except where otherwise noted, all emphasis in quotations is added and internal quotations are omitted.

*Inc. v. Robins*, 578 U.S. 330, 339 (2016) (cleaned up)). Plaintiff has not done so. To the contrary, Plaintiff's alleged injury is ***entirely*** conjectural. Plaintiff cannot even be sure his images were included in LAION-5B in the first place. Instead, he merely believes they are because he and his friends posted pictures to social media and dating websites and LAION scraped various websites, including "Facebook, Instagram, Snapchat, LinkedIn and … dating[] websites." FAC ¶¶ 19, 42. Plaintiff does not even allege that the "dating apps" he used were the same "websites" LAION purportedly scraped. *See id.* ¶¶ 19, 40-41. Even worse, Plaintiff does not allege that ***Prisma*** actually used any of his information. He merely alleges that "Prisma used the LAION-5B biometric database," *id.* ¶ 2, and used certain information from the database "to train the Lensa AI." *Id.* ¶ 20. But Plaintiff offers no non-conclusory allegations that Prisma used his images in particular.

Illinois courts demand more. For example, in *Strautins v. Trustwave Holdings, Inc.*, 27 F. Supp. 3d 871 (N.D. Ill. 2014), hackers infiltrated the South Carolina Department of Revenue and stole various records, including the information of hundreds of thousands of taxpayers. The plaintiff brought a putative class action asserting various privacy claims against the data security company that serviced the Department of Revenue. 27 F. Supp. 3d at 873. Although the Plaintiff "allege[d] that her PII was 'stolen and compromised,'" the court found the allegations too speculative to support Article III standing because the Plaintiff offered no "factual support" that her data had in fact been compromised. *Id.* at 880-81. As the court observed:

> [The Plaintiff's] complaint rests entirely on the *assumption* that her PII was disclosed because (1) the [Department of Revenue] was cyber-attacked and (2) because she filed tax returns in South Carolina. But the fact that hackers gained some access to a [Department of Revenue] database does not necessarily mean, or even plausibly suggest, that they obtained access to all of the data in [Department of Revenue's] possession, and the complaint provides no basis to infer that the hacker (or hackers) obtained *her* data.

*Id.* at 880 (second emphasis original). Similarly, in *Alonso v. Blue Sky Resorts, LLC*, 179 F. Supp.

3d 857 (S.D. Ind. 2016), plaintiffs filed a class action against a hotel that had compromised some patrons' credit card information. 179 F. Supp. 3d at 859. Even though the plaintiffs pled that they stayed at the hotel, the court concluded that the plaintiffs lacked Article III standing because "Plaintiffs have not shown that *their* credit card information was in fact actually stolen." *Id.* at 864.

Plaintiff's allegations fail for the same reasons. As in *Strautins* and *Alonso*, Plaintiff has not pleaded facts showing that his specific information was impermissibly used. At bottom, he alleges only that he put photographs somewhere on the Internet, that LAION scraped *some* of those websites for images, and that Prisma used *some* information from the LAION-5B dataset.

No doubt aware of this fatal flaw in his Complaint, Plaintiff tries a bold gambit to get around Article III—shifting the burden to Prisma. Thus, he now alleges that "Prisma knows what biometric information is in its Biometric Database. ***Prisma has not indicated that Plaintiff's biometric information is not contained in the Biometric Database***." FAC ¶ 28. But the Supreme Court has made clear that, even at the pleading stage, "the plaintiff bears the burden of proof" on each element of standing. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). Indeed, because federal courts are courts of limited jurisdiction, there is a "presumption" that they are "without jurisdiction unless the contrary appears affirmatively from the record." *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 546 (1986) (cleaned up).

### ii. The Mere Inclusion of Images in a Dataset Does Not Constitute an Injury under TransUnion.

Even if the FAC plausibly alleged that Plaintiff's images were included in LAION-5B and were used to train the Lensa App, Plaintiff still fails to show how the alleged conduct *injured* him. The core of his grievance is that his image was included in a dataset along with *billions* of other images. Yet he does not explain how the mere inclusion of such information in a dataset injured him. He cannot solve this problem merely by relying on statutory violations. As the Supreme Court

recently reaffirmed, "even in the context of a statutory violation" plaintiffs lack standing unless they allege an injury analogous to "harms traditionally recognized as providing a basis for lawsuits in American courts." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2204 (2021).

      *TransUnion* is instructive. In *TransUnion*, the plaintiffs alleged that TransUnion violated the Fair Credit Reporting Act by flagging consumers as potential terrorists without taking sufficient measures to ensure the flagging was accurate. *Id.* at 2201-02. The Supreme Court held that only consumers who had inaccurate credit reports transmitted to third parties suffered an Article III injury because such a harm was akin to the common law tort of defamation. *Id.* at 2209. But without such resulting harm, the mere inclusion of information "in a database is insufficient to confer Article III standing." *Id.*

      Plaintiff's claims are deficient in the same way. Even taking Plaintiff's characterization as true, the mere sharing of personal information "without any concrete consequence[s]" is not a cognizable harm. *Hancock v. Urban Outfitters, Inc.*, 830 F.3d 511, 514 (D.C. Cir. 2016). Under the heading of "injuries and damages," the FAC alleges only vague grievances rather than concrete injuries. For example, Plaintiff alleges that he has been "deprived of control over their biometric information" and expresses dissatisfaction that his "biometric data has been used to train technology" that may "perpetuate racial bias and stereotypes" and "create[] significant problems for governments and law enforcement." FAC ¶ 49-51. None of those come anywhere near the kinds of "harms traditionally recognized as providing a basis for lawsuits in American courts" required to confer standing. *TransUnion*, 141 S. Ct. at 2204.

### iii. Plaintiff's 15(c) Claim Requires a Particularized Showing That Plaintiff Was Harmed by the Sale of His Data.

      Section 15(c) of BIPA "prohibits a private entity in possession of biometric data from selling, leasing, trading, or otherwise profiting from that data." *Patterson v. Respondus, Inc.*, 593

F. Supp. 3d 783, 816 (N.D. Ill. 2022). Even where a defendant sells biometric data, however, a plaintiff lacks standing to bring a Section 15(c) claim unless he can show a "particularized injury resulting from the commercial transaction." *Thornley v. Clearview AI, Inc.*, 984 F.3d 1241, 1247 (7th Cir. 2021) (affirming dismissal of Section 15(c) claim for lack of Article III standing).

Here, Plaintiff fails to allege any such particularized injury. Instead, as explained above, he simply claims he is unhappy about the alleged conduct. And with respect to his Section 15(c) claim in particular, Plaintiff merely parrots the BIPA statute by alleging that "Prisma violated BIPA by unlawfully selling, leasing, trading and otherwise profiting from" his information and that, "[a]s a direct and proximate result," he has "suffered and will continue to suffer injury." FAC ¶¶ 86, 88. A plaintiff cannot establish standing under BIPA merely by "parrot[ing] the statutory language without making any specific factual allegations." *Patterson*, 593 F. Supp. 3d at 824 (dismissing Section 15(a) and 15(c) BIPA claims); *see also Gorgas v. Amazon.com, Inc.*, 2023 WL 4173051, at *2 (N.D. Ill. June 23, 2023) (dismissing Section 15(c) claim for lack of Article III standing). Accordingly, this claim should be dismissed.

### B. Prisma Did Not Cause Plaintiff's Purported Injury.

The second element of standing, causation, requires that the injury be "fairly traceable to the challenged action of the defendant, and ***not the result of the independent action of some third party not before the court***." *Lujan*, 504 U.S. at 560 (cleaned up). Accordingly, "if the plaintiff has sued the wrong defendant," the case must be dismissed for lack of standing. *Surfside Non-Surgical Orthopedics P.A. v. Allscripts Healthcare Sols., Inc.*, 2019 WL 2357030, at *6 (N.D. Ill. June 4, 2019) (dismissing case where Plaintiff sued the wrong corporate affiliate).[3] Yet, that is precisely

---

[3] *See also, e.g.*, *Waldman v. Conway*, 871 F.3d 1283, 1293 (11th Cir. 2017) ("Waldman has sued the wrong defendants and therefore lacks standing... ."); *Pritikin v. Dep't of Energy*, 254 F.3d 791, 798 (9th Cir. 2001) (plaintiff lacked standing because the harm alleged was "manifestly the product of the independent action of a third party"); *Duquesne Light Co. v. U.S. E.P.A.*, 166 F.3d 609, 613 (3d Cir. 1999) (same).

the case here. Indeed, it is apparent from the face of the FAC that the scraping and collecting of data of which Plaintiff complains was not done by Prisma, but rather by the independent German non-profit LAION, which created the LAION-5B dataset. *See* FAC ¶ 19.

Moreover, affirmative evidence shows that Prisma is even *further* removed from the alleged conduct.[4] The FAC claims that Prisma used LAION-5B to "train the Lensa AI." FAC ¶¶ 19-20. This is false; and Plaintiff knows it. Prisma did not use *any* data from LAION-5B to develop the Lensa App. Poyaganov Decl., ¶¶ 5, 10, 16. Rather, Prisma used a ready-made computer model called Stable Diffusion developed by non-party Stability AI that had been previously trained on the LAION-5B data—a fact the FAC deliberately omits. *Id.* ¶ 9. Stable Diffusion is a "set of code;" it does not contain any "photographs or biometrics" whatsoever. *Id.* ¶ 10. Prisma neither encouraged nor participated in Stability AI's use of LAION-5B images. *Id.* ¶ 11. Thus, to the extent anyone injured Plaintiff by using LAION-5B to "train" an AI product as Plaintiff alleges, FAC ¶¶ 2-3, that injury was caused solely by Stability AI, not Prisma.

Plaintiff knows all this because the relationship between Lensa and Stability AI is expressly disclosed in Lensa's Privacy Policy—the same policy Plaintiff incorporated into his original Complaint. That Privacy Policy states that "Lensa uses a Neural Network Model Stable Diffusion that allows users to generate personalized Magic Avatars." Ex. 1. Likewise, the Terms of Use say the same and links to Stability AI's website. Ex. 2 at 1. Prisma explained all this *in its prior motion to dismiss in this very case*, but Plaintiff brazenly continues to pretend Stability AI does not exist. Because Prisma has presented factual evidence that a third party—not Prisma—engaged in the alleged conduct, "plaintiff can no longer rest on the allegations in the complaint ... to establish his

---

[4] As noted above (Part I), the Court may consider "whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists." *Apex Digital*, 572 F.3d at 444 (cleaned up). Indeed, "if the facts place the district court on notice that the jurisdictional allegation probably is false, *the court is duty-bound to demand proof of its truth*." *Id.* (cleaned up).

standing to sue." *Flynn*, 39 F.4th at 952.

### C. Plaintiff's Suit Would Not Redress His Purported Injury.

The same facts that show a lack of causation also demonstrate that his purported injuries are not "likely to be redressed by a favorable judicial decision." *Spokeo*, 578 U.S. at 338. Causation and redressability have been described as "two facets of a single causation requirement": "the former examines the causal connection between the assertedly unlawful conduct and the alleged injury, whereas the latter examines the causal connection between the alleged injury and the judicial relief requested." *Allen v. Wright*, 468 U.S. 737, 753 n.19 (1984), *abrogated on other grounds by Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118 (2014). As with causation, Plaintiff's claims are not redressable because he has sued the wrong defendant.

The so-called "Biometric Database" was developed by a company Prisma does not control (LAION) and was processed by yet another company unaffiliated with Prisma (Stability AI) to create an images processing model that is still available on the internet to be used by anyone. Poyaganov Decl., ¶¶ 10-13. As in *Surfside*, the Court cannot "order damages from the wrong defendant." 2019 WL 2357030, at *6. Likewise, any injunctive relief against Prisma regarding the use of Plaintiff's information "would be futile" because Prisma does not possess, use, or control access to Plaintiff's images or information. *Id.* (holding that it "would be futile" to order entity not party to data breach "to implement appropriate security measures").

This exact issue was addressed by the Seventh Circuit in *Doe v. Holcomb*, 883 F.3d 971 (7th Cir. 2018). There, the plaintiff challenged an Indiana statute requiring proof of citizenship for name-change petitions. The plaintiff named several government officials as defendants, including the county clerk who provided information to applicants about the citizenship requirement and processed name-change petitions. *Id.* at 975. The Seventh Circuit affirmed dismissal of the case against the clerk for lack of standing because "any injunction the court may issue against [her]"

10

would be unlikely to redress the plaintiff's injury since "[t]he state courts would still deny Doe's petition on the basis of the citizenship requirement regardless of what information the Clerk provided to him." *Id.* at 979. In short, the court could not hear a controversy where the plaintiff's injuries could not be redressed by a judgment against *that* party.

Here too this Court has no ability to extract relief for Plaintiff as Plaintiff has sued the wrong party. Plaintiff's purported injury stems from the fact that his images were supposedly included in LAION-5B and that someone extracted his biometric information by "scanning" those images. FAC ¶¶ 1, 49. But Prisma has no ability to add or remove images from LAION-5B or to dictate what images were used to train Stable Diffusion. Poyaganov Decl., ¶¶ 4-6, 11-12. Had Prisma never existed, Plaintiff would have still suffered the same (alleged) harm. Thus, to the extent he has been injured at all, no relief against Prisma can redress his injury.

## II. Plaintiff Fails to State a Claim Upon Which Relief Can Be Granted.

In resolving a challenge under Rule 12(b)(6), the Court must assume the truth of well-pleaded facts, but "need not accept as true legal conclusions, or threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Alam v. Miller Brewing Co.*, 709 F.3d 662, 665-66 (7th Cir. 2013) (cleaned up).

### A. Plaintiff's Belief that the Dataset Contained His Biometric Information Is Unsupported and Entirely Speculative.

Plaintiff's entire case rests on pure speculation—that his photos were actually included in the LAION-5B dataset. *See* FAC ¶ 19. As explained above, Plaintiff does not plausibly allege that his images were even included in LAION-5B in the first place. *Supra* Part I.A.i. Instead, he simply *assumes* it to be so because he uploaded his photos to various social media websites and "dating apps" and that LAION-5B was created by "scraping" some of those same websites. FAC ¶¶ 19, 42. Plaintiff alleges nothing to distinguish himself from any other person who has ever uploaded

photographs of themselves to Facebook or Instagram.

Just as such speculation fails to satisfy Article III, it also fails to satisfy Rule 8. Under *Twombly*, Plaintiff must plead "factual allegations" that "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "The pleading must contain something more than a statement of facts that merely creates a ***suspicion***" of wrongdoing. *Id.* (cleaned up). Critically, "[w]here a complaint pleads facts that are merely ***consistent with*** a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.... In such a case, the inference of liability is merely speculative." *Yeftich v. Navistar, Inc.*, 722 F.3d 911, 915 (7th Cir. 2013) (cleaned up) (applying *Twombly* and *Iqbal*).

Plaintiff cannot bridge this gap by stating "on information and belief" that his images were in LAION-5B. FAC ¶ 42. "***[A]llegations stated upon information and belief that do not contain any factual support fail to meet the Twombly standard***." *Brickstructures, Inc. v. Coaster Dynamix, Inc.*, 2017 WL 4310671, at *4 (N.D. Ill. Sept. 28, 2017). This is especially so where, as here, the question at issue is "specifically about what has happened to plaintiff." *Id.* It is settled law that "[i]f plaintiff has nothing on which [he] can base a clear and direct allegation that [he] has suffered an injury, [such] litigation is grounded on pure speculation, something that *Twombly* and *Iqbal* prohibit." *Id.*

Chief Judge Pallmeyer's recent decision in *Heard v. Becton, Dickinson & Co.*, 440 F. Supp. 3d 960, 969 (N.D. Ill. 2020), is instructive. There, like here, the plaintiff alleged a misuse of biometrics "on information and belief." *Id.* at 968-969. Judge Pallmeyer dismissed the BIPA claim (and entire case), explaining:

> If [the plaintiff] has a legitimate reason to suspect that [the defendant] disclosed his biometric data ..., he surely possesses information of some kind that triggered his suspicion.... Such information would not be within [the Defendant's] exclusive

> possession. [The plaintiff], therefore, is not entitled to plead
> disclosure based upon information and belief.... The court is not
> required to credit rank speculation.

*Id.* at 969. Here, the circumstances are worse, as Plaintiff pled that the LAION-5B dataset is

"publicly available." FAC ¶ 19. This means he has equal access to the relevant information yet

fails to substantiate his rank speculation in any way. Indeed, it is telling that rather than plead any

such facts, he tries to shift the burden to Prisma, alleging that: "Prisma has not indicated that

Plaintiff's biometric information is not contained in the Biometric Database." FAC ¶ 28. Even at

the pleading stage, it is Plaintiff's duty to affirmatively plead facts that, if true, would entitle him

to relief. *Twombly*, 550 U.S. at 556.

### B.   BIPA Does Not Apply Because Prisma's Conduct Occurred Outside Illinois.

Under Illinois law, statutes are presumed to regulate only in-state conduct. A statute "is

without extraterritorial effect unless a clear intent ... appears from [its] express provisions." *Avery*

*v. State Farm Mut. Auto. Ins. Co.*, 835 N.E.2d 801, 852 (Ill. 2005). "Because BIPA does not contain

such an express provision, it does not apply extraterritorially to conduct outside of Illinois." *Vance*

*v. Amazon.com, Inc.*, 2022 WL 12306231, at *6 (W.D. Wash. Oct. 17, 2022) (citing *Rivera v.*

*Google Inc.*, 238 F. Supp. 3d 1088, 1100 (N.D. Ill. 2017)).

The key inquiry is whether the conduct at issue "occurred primarily and substantially in

Illinois." *Avery*, 835 N.E.2d at 854. Conduct that takes place outside of Illinois is extraterritorial,

*regardless of the residency of the plaintiff.*" *Id.* at 851. Plaintiff does not allege that Prisma took

*any* action in Illinois. The FAC does not allege, for example, that Prisma downloaded LAION-5B

in Illinois, analyzed it in Illinois, developed the Lensa App in Illinois, or stored the purported

biometric information in Illinois. *See* FAC ¶¶ 20, 43. To the contrary, the Complaint acknowledges

that Prisma is "headquartered in Sunnyvale, California." FAC ¶ 7. This more plausibly suggests

that Lensa's conduct took place in California.

13

There is no daylight between Plaintiff's claims and those dismissed in *Neals v. PAR Tech. Corp.* 419 F. Supp. 3d 1088 (N.D. Ill. 2019). In *Neals*, an Illinois resident sued an out of state corporation that provided a fingerprint scanning system used by the plaintiff's employer. The court held that without specific allegations that the plaintiff's fingerprints were collected *in Illinois*, she failed to state a claim under BIPA. *Id.* at 1091. Similarly, here, Plaintiff does not state where Prisma collected, processed, or used his biometric information. Certainly Plaintiff offers no reason to think Prisma would leave California and venture into the State of Illinois to download a publicly available dataset. Because Plaintiff fails to connect the dots between Prisma and any action that occurred within Illinois, his claims warrant dismissal under the extraterritoriality doctrine.

### C. Plaintiff Fails to State a Claim under BIPA Section 15(b).

Section 15(b) provides that "[n]o private entity may collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifier or biometric information, unless it first" obtains informed consent. 740 Ill. Comp. Stat. Ann. 14/15(b). Plaintiff fails to plausibly plead a violation of Section 15(b) for three reasons.

*First*, BIPA does not "apply to situations wherein the parties are without any direct relationship." *Bernal v. ADP, LLC*, 2019 WL 5028609, at *1 (Ill. Cir. Ct. Aug. 23, 2019). Accordingly, where, as here, a defendant receives biometric data through the independent actions of a third party, Section 15(b) does not apply. *See, e.g.*, *Clark v. Microsoft Corp.*, 2023 WL 5348760 (N.D. Ill. Aug. 21, 2023) (holding that Section 15(b) did not apply to Microsoft where Microsoft received data from a company who used Microsoft products to analyze biometrics).

For example, in *Zellmer v. Facebook, Inc.*, the plaintiff asserted BIPA claims against Facebook on behalf of people who did not use Facebook but were included in pictures posted to Facebook by others. 2022 WL 976981 *4 (N.D. Cal. Mar. 31, 2022). The court dismissed those claims, holding it would be unreasonable and "counterintuitive" to read BIPA as imposing a duty on

Facebook to people "entirely unknown to Facebook." *Id.* Indeed, such a construction of the statute would "lead to obvious and insoluble problems." *Id.* To conclude otherwise, the court held, would fly in the face of the "Illinois Supreme Court's determination that BIPA should not impose extraordinary burdens on businesses." *Id.* at *5.

Here, Plaintiff's theory is unworkable for the same reason. Plaintiff's theory would lead to the exact result the *Zellmer* court correctly held to be absurd and unworkable by forcing everyone who used LAION-5B to "obtain consent from every stranger whose face happened to be caught on camera" in some picture in the dataset. 2022 WL 976981, at *4. As in *Zellmer*, Prisma—and other developers—would have had no feasible way to identify and contact all the individuals pictured in an alleged pool of "over 5 billion … URLs indiscriminately scraped from the internet." FAC ¶ 19.

*Second,* he alleges that Prisma collected "photographs from the internet" and then "used artificial intelligence algorithms to scan the facial geometry of individuals depicted in the photographs." FAC ¶ 1. But BIPA is explicit that "photographs" are not "biometric identifiers." 740 ILCS 14/10. Likewise, the definition of "biometric information" expressly excludes "information derived from items or procedures excluded under the definition of biometric identifiers." *Id.*

*Third,* Plaintiff does not allege that Prisma took an "active step" in collecting his data. As this Court itself recently held in *Jones v. Microsoft Corp.*, Section 15(b) requires that the defendant "undertake some effort to collect or obtain biometric identifiers or information" in a so-called "active step." 2023 WL 130495, at *3 (N.D. Ill. Jan. 9, 2023) (Alonso, J.). The FAC does not allege an "active step" by Prisma. Even if all of Plaintiff's allegations were true, it was non-party LAION who assembled the dataset and posted it publicly online—without any involvement by Prisma. *Jones* is analogous. In *Jones*, the plaintiff's employer stored his biometric information on Microsoft's cloud storage platform. 2023 WL 130495, at *1. This Court dismissed the plaintiff's

Section 15(b) claim against Microsoft because Microsoft did not take an *active step* to collect *plaintiff's* data—it simply received it as a consequence of the third-party employer's collection and transmission. *Id.* at *4. The same is true here: Prisma did not do anything to obtain Plaintiff's photographs—such as scraping his Facebook page. Instead, Prisma merely "accessed" and "used" a publicly available dataset of millions of images. FAC ¶¶ 2, 43.

### D. Plaintiff Fails to State a Claim Under BIPA Section 15(c) Because Prisma Did Not Profit from His Biometric Information.

Section 15(c) states that "[n]o private entity in possession of a biometric identifier or biometric information may sell, lease, trade, or otherwise profit from a person's or a customer's biometric identifier or biometric information." 740 ILCS 14/15(c). The FAC includes only a conclusory allegation that "Prisma has distributed, disseminated, sold, traded, leased and otherwise profited from the biometric information that it unlawfully collected, captured and obtained." FAC ¶¶ 23-24. This "threadbare recital[] of the elements" is insufficient to satisfy Rule 8. *Alam*, 709 F.3d at 665-66. For example, Plaintiff does not allege anything about what information was sold, to whom it was sold, or in what form it was sold.

The only benefit Plaintiff alleges Prisma received with any particularity is its use of "Plaintiff's and Class Members' biometric information to create its highly profitable product." FAC ¶ 29; *see also id.* ¶ 22. Such allegations are insufficient to state a cognizable claim under BIPA. In *Hogan v. Amazon.com, Inc.*, 2022 WL 952763 (N.D. Ill. Mar. 30, 2022), for example, the court remanded claims that "Amazon violated 15(c) because it used the images uploaded to Amazon Photos to train [software], which it then sold to third parties," absent a showing that the plaintiff's particular data made the technology more marketable. *Id.* at *7. Likewise, in *Hazlitt v. Apple Inc.*, 543 F. Supp. 3d 643, (S.D. Ill. 2021), the Southern District of Illinois held that allegations Apple used the plaintiff's data to develop a profitable "facial recognition feature" failed

16

to show that Apple "sold or otherwise profited from [the plaintiffs'] individual biometric data." *Id.* at 651; *see also Patterson*, 593 F. Supp. 3d at 825 (remanding where plaintiff did "not claim that [the defendant] sold, leased, or traded her biometric data directly"). Similarly, Plaintiff here does not allege how his specific data enhanced the value of the Lensa App.

In short, even if, *arguendo*, Lensa's image generator had been trained on a dataset of billions of photos *and* that dataset included images of Plaintiff, that does not mean Prisma sold or traded his information. At most, Plaintiff alleges that Prisma profited indirectly by using his data to develop a popular product. Such indirect benefit cannot support a claim under Section 15(c).

### E. Plaintiff Fails to State a Claim Under BIPA Section 15(d) because Prisma Did Not Disclose, Redisclose, or Disseminate His Biometric Information.

Plaintiff's claim under Section 15(d) fails for the same reason. Section 15(d) states that no private entity may "disclose, redisclose, or otherwise disseminate a person's ... biometric identifier or biometric information" without written consent. 740 ILCS 14/15(d). To state a claim under Section 15(d), a plaintiff must allege well-pled facts to show his biometric data was disclosed to a third party, not simply "conclusions that parrot BIPA's language." *Carpenter v. McDonald's Corp.*, 580 F. Supp. 3d 512, 519 (N.D. Ill. 2022) (dismissing Section 15(d) claim).

Here, Plaintiff alleges no specific facts about Prisma's disclosing, redisclosing, or disseminating his biometric information. Instead, he claims that Lensa "uses the Biometric Database to create *new pictures* through an algorithmic learning process." FAC ¶ 29. Plaintiff's conclusory allegations that Prisma discloses biometric information, *e.g.*, FAC ¶¶ 1, 9, 45, cannot be reconciled with his admission that Lensa AI is a photo editing tool that generates "new pictures." *Id.* ¶ 29. Disseminating "*new pictures*" and "*personalized* Magic Avatars" is not at all the same as disseminating photos of Tyrone Brantley.

17

### III.     Plaintiff's Purported Class Includes Lensa Users Subject to Binding Arbitration.

Plaintiff's proposed class of Illinois residents necessarily includes users of the Lensa App. But the Lensa App's Terms of Use (attached hereto as Ex. 2) expressly provide that "all disputes arising out of or relating to these Terms or Prisma will be resolved through confidential binding arbitration." Ex. 2 § 15.[5] ***As this Court ruled previously***, where a plaintiff clicks "agree" to Terms of Use containing an arbitration clause, arbitration is required. *Auyeung v. Toyota Motor Sales, USA, Inc.*, 2019 WL 3385189, at \*3-8 (N.D. Ill. July 1, 2019) (Alonso, J.). Likewise, another court recently granted Prisma's motion to compel arbitration based on the Lensa Terms of Use. *Flora v. Prisma Labs, Inc.*, 2023 WL 5061955 (N.D. Cal. Aug. 8, 2023) ("The [Lensa] Terms of Use is short and written in legible font; the arbitration provision, like all sections of the agreement, is bolded and clearly labelled[.]").

Where, like here, parties have agreed to arbitrate, venue is improper and dismissal under FRCP 12(b)(3) is required. *See Grasty v. Colo. Tech. Univ.*, 599 F. App'x 596, 597 (7th Cir. 2015).

### IV.     This Court Lacks Personal Jurisdiction Over Prisma.

This Court lacks general and specific jurisdiction over Prisma because Prisma is not home in Illinois and took no action in Illinois. ***This issue alone is dispositive*** pursuant to Rule 12(b)(2).

Courts only have general jurisdiction where defendant is at "home"—generally the defendant's "place of incorporation and principal place of business." *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014). Plaintiff acknowledges that Prisma is a "California corporation, headquartered in Sunnyvale, California." FAC ¶ 7.

Specific jurisdiction exists when a defendant has purposefully directed its activities at the

---

[5] The Terms of Use are publicly available at https://tos.lensa-ai.com/terms. The Court can also consider extrinsic evidence in determining whether claims are subject to arbitration. *E.g.*, *McNally Tunneling Corp. v. City of Evanston*, 2001 WL 76338, at \*1 n.2 (N.D. Ill. Jan. 26, 2001).

forum state or purposefully availed itself of the privilege of conducting business in that state and the alleged injury relates to the defendant's contacts with the forum. *See Asahi Metal Ind. Co., Ltd. v. Super. Ct. of Cal.*, 480 U.S. 102, 109 (1987) (holding minimum contacts requires "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum state"). Plaintiff claims he meets this standard because "images contained in the training set were uploaded and created using internet-based platforms and websites from companies in Illinois or companies who operate servers in Illinois." FAC ¶ 12. As an initial matter, Plaintiff offers no reason to make this leap as the sites he allegedly posted images to, such as Facebook and Tinder, are all headquartered in California and maintain servers in California.

But even if—hypothetically—Plaintiff's images were taken from Illinois servers, that does not create a nexus between Illinois and *Prisma*. The FAC acknowledges that *LAION* scraped the images, not Prisma. *Id.* ¶ 19. And the location from where Plaintiff may have created or posted images is irrelevant because, as the Supreme Court has explained, "the plaintiff cannot be the only link between the defendant and the forum." *Walden v. Fiore*, 571 U.S. 277, 285 (2014).

The Supreme Court's decision in *Walden* is particularly analogous. There, the defendant seized cash from the plaintiff at an airport in Georgia. As a Nevada resident, the plaintiff brought suit in Nevada and argued that a Nevada court should exercise jurisdiction because the defendant "knew his allegedly tortious conduct in Georgia" would affect the plaintiff in Nevada. *Id.* at 279. The Court rejected the argument, holding "the relationship must arise out of the contacts that the 'defendant *himself*' creates with the forum state." *Id.* at 284 (emphasis in original).

Like in *Walden*, the Plaintiff here argues that Prisma has subjected itself to Illinois jurisdiction because Plaintiff uploaded his photographs while in Illinois to third-party websites with servers in Illinois. Plaintiff's argument, however, "impermissibly allows a plaintiff's

contacts with the defendant and forum to drive the jurisdictional analysis." *Id.* at 289. Plaintiff's connection with Illinois is irrelevant to determining Prisma's connection with Illinois because "the defendant's contacts with persons who reside there" does not satisfy personal jurisdiction. *Id.* at 285. And a plaintiff cannot invert that foundational requirement "by demonstrating contacts between the plaintiff . . . and the forum state." *Id.* at 284.

Here, Plaintiff failed to allege that Prisma hosted any servers in Illinois or directed any of its efforts specifically to residents of Illinois. Even less tenuous than the allegations in *Walden*, Plaintiff pleads no facts establishing that Prisma *knew* it was directing its activities at plaintiffs with Illinois connections. *Id.* at 289. That Plaintiff's images were taken from Illinois servers does not create the requisite nexus between Prisma and Illinois.

Judge Ellis, from the Northern District of Illinois, recently dismissed a BIPA case on these exact grounds. *See Stein v. Clarifai*, 526 F.Supp.3d 339 (N.D. Ill. 2021). Specifically, the defendant was accused of violating BIPA when it allegedly received the biometrics of Illinois residents through a third-party based in Illinois. Judge Ellis dismissed the case for lack of personal jurisdiction, explaining that defendant's "contacts with Illinois must come from its suit-related activity in the forum state, not from the activity of a third party." *Id.* at 344.

So too here. Even if Plaintiff created the images in Illinois and even if LAION collected them from Illinois servers, Plaintiff does not plead that *Prisma* had any relevant contacts with Illinois. Accordingly, this Court lacks personal jurisdiction over Plaintiff's claims.

## CONCLUSION

For the foregoing reasons, Plaintiff's First Amended Complaint is incurably defective. Prisma respectfully requests that the Court not provide Plaintiff with a third bite at the apple and instead dismiss Plaintiff's case with prejudice without leave to amend.

Date: September 8, 2023            Respectfully submitted,

                                   By:    *Brenda R. Sharton*
                                          Brenda R. Sharton (*pro hac vice*)
                                          Benjamin Sadun (*pro hac vice*)
                                          DECHERT LLP
                                          One International Place,
                                          100 Oliver Street, 40th Floor
                                          Boston, MA 02110
                                          brenda.sharton@dechert.com
                                          benjamin.sadun@dechert.com
                                          Telephone: (617) 728-7100
                                          Facsimile: (617) 275-8374

                                          Christopher S. Burrichter
                                          DECHERT LLP
                                          35 West Wacker Drive, Suite 3400
                                          Chicago, IL 60601-1608
                                          christopher.burrichter@dechert.com
                                          Telephone: (312) 646-5800
                                          Facsimile: (312) 646-5858

                                          *Attorneys for Defendant Prisma Labs, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that, on September 8, 2023, a copy of the foregoing was filed using the CM/ECF electronic filing system. Service of this filing will be made on attorneys of record in the case by operation of the Court's electronic filing system, and parties may access these filings through the Court's electronic filing system.

*Brenda R. Sharton*

Brenda R. Sharton (*pro hac vice*)